UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TIFFANI RODGERS,

                          Plaintiff,

      -against-                                    **MEMORANDUM**
                                                       **AND ORDER**
ROSE PARTY FUNCTIONS CORP. d/b/a/           10-CV-4780 (MKB)
THE ROSE CASTLE, FRANKLIN REALTY
CORP. and ISACK ROSENBERG, d/b/a
THE ROSE CASTLE,

                        Defendants.
---------------------------------------------------------------X
*Gold, Steven M., United States Magistrate Judge:*

## INTRODUCTION

     Rose Castle is a catering hall in Brooklyn, New York operated by defendants. Plaintiff Tiffani Rodgers attended an event at Rose Castle on October 20, 2007. Rodgers claims in this case that she slipped and fell while walking down stairs at Rose Castle, and that her fall was caused by liquid or debris on the stairs.

     Plaintiff learned during discovery that a video camera was operating in the stairwell at the time of her fall. More specifically, in interrogatory responses dated January 22, 2013, defendants advised plaintiff that their video recording system "would have captured plaintiff's fall" and that plaintiff's fall "was shown on the video camera" but that "the footage recycles every 2 weeks and the footage of the fall was not saved." Pl. Mot. Ex. 3, Responses to Interrogatories 11 and 12.[1] Plaintiff now seeks sanctions for defendants' failure to save and produce the video recording showing her fall. By Order dated July 15, 2013, United States District Judge Margo K. Brodie referred plaintiff's motion to me.

---

[1] "Pl. Mot." refers to Plaintiff's Motion for Sanctions, Docket Entry 101.

## FACTS

The essential facts relevant to plaintiff's motion for sanctions are undisputed. As indicated above, defendants have acknowledged in their answers to interrogatories that plaintiff's fall was captured on videotape and that the tape was recycled within two weeks of plaintiff's accident. Plaintiff further alleges, without dispute by defendants, that she was assisted after her fall by security personnel on the scene who arranged for an ambulance to take plaintiff to a hospital. Pl. Mem. at 2-3. Plaintiff was carried to the ambulance on a stretcher and in a cervical collar. Rodgers Aff. ¶ 2.[2] On Monday, October 22, 2007, just two days after her accident, plaintiff called Rose Castle and spoke with defendants' office manager; when plaintiff described her accident, the office manager responded by providing plaintiff with defendants' insurance information. *Id.* ¶ 3.

Defendants themselves acknowledge that a security guard on duty when plaintiff fell prepared an accident report, or at least a note, describing plaintiff's accident. Def. Opp. at ¶ 9 and Ex. 1.[3] Defendants further acknowledge that plaintiff contacted Rose Castle within days of her fall seeking information about defendants' insurance carrier. Def. Opp. at ¶ 14. Either plaintiff or an employee of Rose Castle must have contacted defendants' insurance carrier promptly, because on November 2, 2007 -- a date within two weeks of plaintiff's accident -- the carrier sent plaintiff a letter acknowledging plaintiff's claim for personal injuries and seeking additional information from her. Rodgers Aff. Ex. B, Docket Entry 101-2 at 4-5.

---

[2] "Rodgers Aff." refers to the Affidavit of Tiffani Rodgers, Exhibit 2 to plaintiff's motion, Docket Entry 101-2.
[3] "Def. Opp." refers to the Affirmation in Opposition to Motion for Sanctions of Jennifer R. Oxman, Esq., Docket Entry 103. Exhibit 1 is a note on Rose Castle stationery dated October 21, 2007, apparently prepared by defendants' security officer and reporting that plaintiff slipped while walking up steps.

## DISCUSSION

A district court may impose sanctions for spoliation of evidence pursuant to its inherent powers and even absent violation of a discovery order. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A party seeking a sanction for spoliation must generally establish the following:

> (1) that the party having control of the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotations and citation omitted).

A duty to preserve evidence arises "[o]nce a party reasonably anticipates litigation"; at that point, the party "must suspend its routine document [or videotape] retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant [evidence]." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Litigation need not have been commenced for the duty to preserve to arise; when a plaintiff sustains a serious injury on defendants' premises, "there can be little doubt that, at the time of the accident, Defendants could have expected Plaintiff to file a lawsuit." *Matteo v. Kohl's Department Stores, Inc.*, 2012 WL 760317, at *3 (S.D.N.Y. Mar. 6, 2012); *see also Simoes v. Target Corp.*, 2013 WL 2948083, at *3, *5 (E.D.N.Y. June 14, 2013) ("On the same day as the accident, Target had knowledge of the slip and fall" and shortly thereafter, "through its assigned claims representative, had notice of a specific claim"); *see also Siggelko v. Kohl's Department Stores, Inc.*, 2009 WL 750173, at *3 (E.D.N.Y. Mar. 17, 2009) ("Assuming that Plaintiff suffered some injury, Kohl's could have anticipated that Plaintiff would file a lawsuit").

Here, defendants' duty to preserve the video recording of plaintiff's accident arose well within the two-week period before the video was erased. Defendants should have anticipated litigation on October 20, 2007, when defendant's security personnel arranged for plaintiff to be taken by ambulance to a hospital for treatment of the injuries she sustained when she slipped on defendants' stairs. If not then, the duty to preserve certainly arose at the very latest on October 22, 2007, when plaintiff called Rose Castle's office manager and it became clear that plaintiff was seeking compensation for her injuries from defendants' insurance carrier.

Defendants, of course, did not preserve the videotape of plaintiff's fall despite the facts that should have caused them to reasonably anticipate litigation. Their negligence in failing to preserve key evidence despite the likelihood of litigation is enough to establish that evidence was destroyed with a "culpable state of mind." Although sanctions are commonly imposed against parties who act in bad faith or with gross negligence, the failure to produce evidence is properly evaluated along a "continuum of fault" and acting knowingly or negligently is sufficient to establish culpability. *Residential Funding Corp.*, 306 F.3d at 108 (internal citations omitted). The Second Circuit has ruled, "[t]he sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." *Id*. The Court further explained its ruling by quoting the following passage from *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991):

> [The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

4

306 F.3d at 108. Once a duty to preserve evidence arises, any destruction of that evidence is, at a minimum, negligent. *Zubulake*, 220 F.R.D. at 220. Here, as discussed above, defendants had a duty to preserve the video recording well before it was erased. Accordingly, I conclude that defendants destroyed the video recording with a culpable state of mind.

Plaintiff contends that defendants have been evasive during discovery and that this demonstrates that defendants destroyed the video recording in bad faith. Defendants, not surprisingly, deny that they have failed to meet their discovery obligations forthrightly. I do not address the parties' dispute on this point because I conclude that it has little or no bearing on the pending motion. Neither side has presented any evidence about how the video recording came to be destroyed: whether, for example, there was a deliberate decision to erase the recording or whether the tape was reused inadvertently. Plaintiff filed her lawsuit almost three years after her accident. Whatever evasive behavior defendants may have engaged in during discovery in this lawsuit sheds little light on how the videotape came to be destroyed more than three years earlier. Moreover, as indicated above, defendants' failure to preserve the video recording even after they became aware that plaintiff had fallen on the stairs at their premises, was carried by stretcher to an ambulance and taken to the hospital, and intended to press a claim for compensation, is sufficient to establish that the recording was negligently destroyed.

The final element plaintiff must establish to prevail on her motion is that the lost evidence would have been relevant to her claim. Destroyed evidence is relevant in this context if there is any likelihood that it "would have been of the nature alleged by the party affected by its destruction." *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)). Generally, this element is construed to require a party seeking sanctions for spoliation to present extrinsic evidence demonstrating that the destroyed

5

evidence would have been favorable to her case. *Simoes*, 2013 WL 2948083, at *6 (quoting *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 112 (E.D.N.Y. 2012)). Yet determining what the video recording would have revealed unavoidably requires speculation; "in the absence of the destroyed evidence, we can only venture guesses with varying degrees of confidence as to what that missing evidence may have revealed." *Kronisch*, 150 F.3d at 127. For this reason, a party seeking spoliation sanctions should not be held "to too strict a standard of proof regarding the likely contents of the destroyed evidence," because to do so "would subvert the prophylactic . . . purposes of the adverse inference." *Id*. at 128; *see Residential Funding*, 306 F.3d at 109.

Plaintiff's claim in this action is that "she slipped on what appeared to be wet marble steps which she believed contained food and/or liquid." Sec. Am. Compl. ¶ 8.[4] Plaintiff argues that the destroyed video recording would likely have revealed whether the steps were wet, how they became wet, whether defendants' employees attempted to clean the steps, and precisely how plaintiff fell. Pl. Mem. at 5. As pointed out above, defendants have acknowledged in their answers to interrogatories that plaintiff's fall would have been recorded by the video camera. It follows logically, then, that the destroyed video recording would also have shown whether other Rose Castle patrons had used the stairs before plaintiff's accident and whether any of them spilled beverages when they did so. Moreover, as plaintiff contends, the recording would have shown whether any Rose Castle employee cleaned the stairs, or observed their condition, prior to plaintiff's accident. Depending on the lighting, camera angle, and quality of the recording, the destroyed tape might also have revealed whether the steps were wet when plaintiff fell. I note in this regard that plaintiff alleges that guests attending a wedding reception at Rose Castle at the time told her that they had repeatedly advised Rose Castle employees that the steps were wet

---

[4] "Sec. Am. Compl." Refers to Plaintiff's Second Amended Complaint, Docket Entry 91.

from spilled drinks, but that no corrective action was taken, thus suggesting some corroboration of plaintiff's allegations. Sec. Am. Compl. ¶ 9. For these reasons, and bearing in mind the concern expressed by the Second Circuit in *Kronisch* that plaintiffs not be held to too high a burden of proof, I conclude that the video recording destroyed by defendants would have been relevant, and that sanctions are therefore warranted.

A district court has broad discretion when deciding upon an appropriate sanction for spoliation. *Residential Funding*, 306 F.3d at 107; *West*, 167 F.3d at 779. The sanction plaintiff seeks in her motion is a ruling precluding defendants from presenting a defense. Preclusion of a defense, like dismissal of a claim, is a drastic remedy and should be imposed only in extreme cases and where lesser sanctions would be inadequate. *West,* 167 F.3d at 779; *Slovin v. Target Corp.*, 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013). A sanction is sufficient if it "restore[s] the prejudiced party to the same position [s]he would have been in" were the destroyed evidence available. *West*, 167 F.3d at 779 (quoting *Kronish*, 150 F.3d at 126) (internal quotation marks omitted). Here, an adverse inference instruction advising the jurors that they may infer that the video recording would have corroborated plaintiff's allegations and rebutted defendants' assertions will suffice to restore plaintiff to the position she would have been in had the recording been preserved.

Finally, plaintiff seeks an award of attorney's fees incurred in connection with the pending motion. The parties have not presented any authority addressing the circumstances under which fees are properly awarded when a spoliation sanction is imposed not for violating a court order or a provision of the Federal Rules of Civil Procedure but pursuant to a court's inherent supervisory powers, and where the evidence at issue was negligently lost or destroyed.

7

Accordingly, plaintiff's application for fees is denied without prejudice to renewal accompanied by a memorandum of law citing relevant case law authority supporting plaintiff's position.

## CONCLUSION

For the reasons stated above, plaintiff's motion for sanctions is granted. Plaintiff is entitled to an adverse inference instruction, advising the jurors hearing this case that they may infer that the video recording would have corroborated plaintiff's allegations and rebutted defendants' assertions had it been preserved. The aspect of plaintiff's motion seeking attorney's fees is denied without prejudice.

**SO ORDERED.**

    /s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

**Brooklyn, New York**
**November 12, 2013**

U:\smg current docs\RODGERS 111213 final.docx